[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15768

_____

D.C. Docket No. 1:16-cr-20957-CMA-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

SHELDON RICARDO PALMER,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 2, 2019)

Before JORDAN, GRANT, and HULL, Circuit Judges.

PER CURIAM:

Sheldon Palmer appeals his convictions on 13 counts of wire fraud in violation

of 18 U.S.C. §§ 1343 & 2, and 3 counts of aggravated identity theft in violation of

18 U.S.C. § 1028A(a)(1).   Following our review of the record, and with the benefit of oral argument, we affirm.   Because we write for the parties, we assume their familiarity with the issues presented, and set out only what is necessary to explain our decision.

First, Mr. Palmer argues that there was a constructive amendment of the indictment by the district court and the government as to the wire fraud counts because he was tried and convicted for "receiving" the cash from the fraudulent money transfers, and not "transmitting" or "sending" any money as charged in the indictment.   *See* Appellant's Br. at 31-36.   A constructive amendment, generally speaking, occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment. *See, e.g., United States v. Madden*, 733 F.3d 1314, 1318 (11th Cir. 2013).

Here there was no constructive amendment.   The indictment charged that Mr. Palmer, as part of a scheme to defraud, caused the transmission of wire communications "for" 13 money transfers.   The evidence at trial showed that Mr. Palmer went to Wal-Mart stores and, by answering security questions and providing identification (sometimes with a false identity), obtained cash from a fraudulent money transfer.   The evidence, including the still shots from the Wal-Mart security videos, also showed that Mr. Palmer saw Wal-Mart employees typing information

on a computer for the purpose of finalizing the money transfer and giving him the money. The wire communications charged in the indictment were the transmissions sent from the Wal-Mart stores in South Florida to MoneyGram in Minnesota, and by showing up at the Wal-Mart stores and requesting the payment from the money transfers in question, Mr. Palmer caused (or at least aided and abetted) those wire communications. Stated differently, the wire communications charged in the wire fraud counts would not have taken place without Mr. Palmer showing up to request payment from the money transfers.

Second, Mr. Palmer contends that the district court erred in admitting, as inextricably intertwined, evidence of more than 20 uncharged instances where he went to a Wal-Mart store to pick up cash from a money transfer. *See* Appellant's Br. at 38-42. We do not find any abuse of discretion. The uncharged pickups were temporally consistent with the indictment – they took place between August 10, 2014, and November 30, 2015, while the wire fraud counts involved pickups between August 17, 2014, and November 30, 2015 – and helped to establish Mr. Palmer's methods. *See United States v. Ford*, 784 F.3d 1386, 1394 (11th Cir. 2015).

Third, Mr. Palmer asserts that the district court erred in certain of its evidentiary rulings. *See* Appellant's Br. at 43-49. We again find no abuse of discretion. We address the challenge to Government Exhibits 26 and 30 and affirm as to the other evidentiary rulings without further discussion.

3

There is some authority supporting the admission of Government Exhibits 26 and 30 as business records under Rule 803(6), *e.g., United States v. Fuji*, 301 F.3d 535, 539 (7th Cir. 2002), but even if they were not admissible on that basis, they were likely admissible as summary exhibits under Rule 1006. Significantly, there is no claim that the original business records from which Government Exhibits 26 and 30 were derived – the records concerning the money transfer transactions – were themselves inadmissible. *See generally Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1160 (11th Cir. 2004). Given that the original business records were not prepared for litigation, Government Exhibits 26 and 30 were not "testimonial" in the Sixth Amendment sense, and Mr. Palmer's Confrontation Clause claim under *Crawford v. Washington*, 541 U.S. 36 (2004), fails. *See United States v. Nixon*, 694 F.3d 623, 634-35 (6th Cir. 2012); *United States v. Jamieson*, 427 F.3d 394, 411 (6th Cir. 2005).

Fourth, Mr. Palmer says that the evidence on the wire fraud charges was insufficient because the government did not prove that he knew that wire transmissions would be sent from Southern Florida to Minnesota. *See* Appellant's Br. at 49-52. We reject this claim because it is founded on a misapprehension of what proof is necessary in a wire fraud case like this one. "Where one does an act with knowledge that the use of the [interstate wires] will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not

actually intended, then he 'causes' the [interstate wires] to be used." *United States v. Ross*, 131 F.3d 970, 985 (11th Cir. 1997) (citation omitted). *See also United States v. Hill*, 643 F.3d 807, 862 (11th Cir. 2011). There was sufficient evidence for the jury to find either that Mr. Palmer knew that wire transmissions would be used or that such use was reasonably foreseeable to him.

Finally, Mr. Palmer claims that the cumulative effect of the errors he has identified warrant reversal, even if one or more of them individually do not. *See* Appellant's Br. at 52-53. Because we have found no errors, we reject Mr. Palmer's cumulative error argument.

**AFFIRMED.**